**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| EUREKA WATER COMPANY, )<br>an Oklahoma corporation, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NESTLÉ WATERS NORTH )<br>AMERICA INC., a Delaware )<br>corporation, )<br>)<br>Defendant. ) | Case No. CIV-07-988-M |

## **ORDER**

Before the Court is plaintiff's Motion for Preliminary Injunction, filed November 5, 2007. On November 26, 2007, defendant filed its response. On January 16-17, 2008, the Court conducted a hearing on plaintiff's motion.

I. Background

Plaintiff Eureka Water Company ("Eureka") is Oklahoma's largest bottled water company. As part of its operations, Eureka bottles Ozarka brand Spring Water, Ozarka brand Drinking Water, Ozarka brand Distilled Water, and Ozarka brand Fluoridated Drinking Water at its facility located in Oklahoma City. On November 14, 1975, Eureka and Arrowhead Puritas Waters ("Arrowhead"), the then-owner of the Ozarka trademark and a predecessor to defendant Nestlé Waters North America Inc. ("Nestlé"), entered into an exclusive license agreement ("License Agreement") for a territory consisting of 60 counties in Oklahoma.

In 1987, The Perrier Group, Inc. ("Perrier") acquired the Ozarka brand when Arrowhead became its wholly-owned subsidiary. On March 5, 1997, Dave Evans of Perrier and Dave Raupe of Eureka met in person as part of an effort to resolve a variety of issues. Mr. Evans then prepared

a letter outlining the fundamental positions that were addressed at the meeting. On March 12, 1997, Mr. Raupe sent a response letter back to Mr. Evans. Subsequent to these letters, Perrier began paying Eureka 50 cents per PET case and 30 cents per Bulk case for Ozarka brand bottled spring water products sold in Oklahoma by Wal-Mart, Sam's Club, and the military.

Additionally, in the early 1990's, Nestlé and Eureka worked out an arrangement whereby Eureka could buy and sell smaller sizes of Ozarka brand bottled water products bottled by Nestlé, rather than Eureka bottling these products itself or finding other means of bringing these packages to market. The parties also agreed that Nestlé could directly contract with the key accounts on per case pricing, and the parties worked out an arrangement whereby Eureka could bill Nestlé directly for reimbursement of the difference between the lower price paid by the key account customers and the higher price paid to Nestlé by Eureka.

Nestlé's parent organization acquired Perrier in 1992 and eventually formed Nestlé as the owner of the Ozarka brand and various other bottled water brands. On August 14, 2003, Nestlé met with Eureka. Nestlé sought to work out different distribution arrangements, as well as a shared commitment to growing Ozarka brand bottled water's share of the Oklahoma market. Nestlé proposed an aggressive plan of increased "trade spending," with Nestlé and Eureka splitting these trade spending costs 50-50. Additionally, Nestlé's representatives informed Eureka that effective October 1, 2003, the fees Nestlé paid for sales to Wal-Mart, Sam's Club, and the military bases would be reduced to 25 cents per case and advised Eureka that reimbursement for "pickup allowances" and returns from Eureka's customers had to be dropped. Eureka declined to split the trade spending costs 50-50 and objected to the proposed reduction and elimination of fees, reimbursements, and credits.

Nestlé again met with Eureka in May 2007 to try either to work out new arrangements on the sale and distribution of Ozarka brand bottled water products or to buy the retail Ozarka brand bottled water business from Eureka.  The meeting was not successful.  On August 7, 2007, Nestlé notified Eureka that effective October 15, 2007, the payment of per case fees and pickup allowances would end and pricing to Eureka on all Ozarka brand bottled spring water products would be brought in line with pricing for comparable wholesale distributors.

On September 7, 2007, Eureka filed the instant action against Nestlé, seeking the following:

> a declaratory judgment decreeing that Nestle has violated the terms of the agreements between the parties and that Nestle must continue to sell Ozarka Spring Water and other Ozarka branded water products to Eureka at a price not more than that being paid by other Ozarka distributors or customers.  In addition Nestle must refrain from raising prices arbitrarily to make Eureka non-competitive in Eureka's exclusive territory thus placing Eureka at a competitive disadvantage.  Further, that Nestle pay Eureka the agreed upon price for all sales of Ozarka branded water products with which Nestle invades Eureka's exclusive area of distribution, that Nestle pay all amounts due Eureka, that the Court render judgment in favor of Eureka for the amounts due and owing to Eureka . . . .

Complaint at 3-4.  On November 5, 2007, Eureka filed a Motion for Preliminary Injunction, requesting the Court enjoin Nestlé from selling water products bearing the Ozarka brand without Eureka's consent until a final hearing and determination of the merits in this action or, alternatively, require Nestlé to maintain the parties' status quo, i.e., that Nestlé continue paying its Invasion Fees of twenty-five cents per case for all products for direct sales of Ozarka brand water to Wal-Mart and Sam's Club and that Nestlé offer its old pricing (including reimbursements to Eureka for the differences in pricing between the amount of the wholesale warehouse's price and Eureka's price) so that Eureka can continue to sell Ozarka brand water to its key wholesale warehouse customers for a profit.

II.     Discussion

A movant seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (internal citation omitted). Whether to grant a preliminary injunction rests within the sound discretion of the trial court. *United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999).

If, however, a movant is seeking a disfavored preliminary injunction – preliminary injunctions that alter the status quo, mandatory preliminary injunctions, or preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits – the movant must satisfy a heightened burden. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). "[A]ny preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course. Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely of this Circuit's modified-likelihood-of-success-on-the-merits standard." *Id.* at 975-76.[1]

---

[1]The Tenth Circuit employs a "modified requirement as to the likelihood of success" if "the movant has established the other three requirements for a preliminary injunction." *Federal Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194-95 (10th Cir. 1999). Under the modified standard, a movant may satisfy the likelihood of success requirement "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for

As set forth above, Eureka requests the Court either to enjoin Nestlé from selling water products bearing the Ozarka brand without Eureka's consent or to require Nestlé to continue paying the twenty-five cents per case fees and to offer its old pricing. The Court finds that both of these requested preliminary injunctions are disfavored preliminary injunctions. A preliminary injunction enjoining Nestlé from selling Ozarka brand water products would alter the status quo, and a preliminary injunction requiring Nestlé to continue paying fees and to offer its old pricing would be a mandatory preliminary injunction. Accordingly, the Court finds that Eureka must satisfy a heightened burden and can not rely on the Tenth Circuit's modified-likelihood-of-success-on-the-merits standard.

Having heard the evidence presented, the Court finds that Eureka has not met its burden of showing a substantial likelihood of success on the merits. First, Eureka contends that the License Agreement applies to all Ozarka brand waters. Having reviewed the plain language of the License Agreement, however, the Court finds that the License Agreement is not so broad and that it does not apply to Ozarka brand bottled spring water, which is the water at issue in this case. The License Agreement provides that Eureka "is granted a royalty-free, paid up right and license to use the said OZARKA mark in connection with the processing, bottling, sale and distribution within Said Territory of <u>purified water and/or drinking water made from OZARKA drinking water concentrates and in connection with coolers and dispensers therefore</u>, subject to the terms and conditions hereinafter set forth." License Agreement at ¶ 1 (emphasis added).[2] Further, the term "spring

---

litigation . . . ." *Id.*

[2]Both "purified water" and "drinking water" are defined in the License Agreement, and said definitions do not include "spring water." *See* License Agreement at ¶ 1(a)-(c).

water" is not contained anywhere in the License Agreement. Accordingly, the Court finds that Eureka does not have an exclusive license to Ozarka brand bottled spring water based upon the terms of the License Agreement.

Second, Eureka contends that the parties' course of performance over the years, specifically Nestlé's continued payment of the per case fees for Ozarka brand bottled spring water sold to Wal-Mart, Sam's Club, and the military demonstrates the parties' understanding that the License Agreement applies to all Ozarka brand bottled waters. Express terms of an agreement and any course of performance "shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance . . . ." Okla. Stat. tit. 12A, § 2-208(2). As set forth above, the Court finds that based upon the express terms of the License Agreement, Eureka does not have an exclusive license to Ozarka brand bottled spring water. The Court further finds that any course of performance indicating that Eureka does have an exclusive license to Ozarka brand bottled spring water can not be reasonably construed as consistent with the express terms of the License Agreement. Accordingly, the Court finds that the express terms of the License Agreement must control and prevail over the course of performance.

Additionally, the Court finds that any course of performance indicating that Eureka does have an exclusive license to Ozarka brand bottled spring water is not sufficient in itself to modify the License Agreement. While course of performance is relevant to show a "modification of any term inconsistent with such course of performance," Okla. Stat. tit. 12A, § 2-208(3), the requirements of the statute of frauds "must be satisfied if the contract as modified is within its provisions." Okla. Stat. tit. 12A, § 2-209(3). Because the License Agreement concerns the sale of

goods in excess of $500, the Court finds the requirements of the statute of frauds must be satisfied, *see* Okla. Stat. tit. 12A, § 2-201, and any modification must be in writing.

Third, Eureka contends that the March 5, 1997 letter from Mr. Evans constitutes a written agreement that Perrier, now Nestlé, would pay per case fees for Ozarka brand bottled spring water sold to Wal-Mart, Sam's Club, and the military.  The Court, however, finds that the plain language of the letter does not indicate a final agreement between the parties.  In his letter, Mr. Evans states: "<u>As a precursor to the final agreement</u>, I feel that it is important to outline the fundamental positions that we addressed at today's meeting."  March 5, 1997 letter at 1 (emphasis added).  Mr. Evans further states: "Dave, I would appreciate you and Steve providing me some feedback on these points so that <u>we can quickly come to a final agreement</u>."  *Id.* at 3 (emphasis added).  Additionally, the Court finds that a review of Mr. Raupe's March 12, 1997 response letter clearly shows that the parties were negotiating a final agreement, that there were still issues the parties were not in agreement on, and that no final agreement had been reached.  Accordingly, the Court finds that the March 5, 1997 letter from Mr. Evans does not constitute a written agreement.

Finally, Eureka contends that based upon the parties' alleged agreements and course of performance, Nestlé is obligated to continue paying the per case fees and to continue selling Eureka Ozarka brand bottled spring water at "favored nation" pricing.  Because these alleged agreements and obligations concern the sale of goods in excess of $500, the Court finds that the requirements of the statute of frauds must be satisfied.  Eureka has presented no evidence of any writing "sufficient to indicate that a contract . . . has been made between the parties".  Okla. Stat. tit. 12A, § 2-201.  In fact, in his testimony, Steve Raupe repeatedly testified that there was no contract and that it was a 100% handshake deal.  Accordingly, the Court finds that Eureka has failed to satisfy

its burden of establishing that Nestlé is legally obligated to continue paying the per case fees and to continue selling Eureka Ozarka brand bottled spring water at "favored nation" pricing.

Accordingly, as set forth above, the Court finds that Eureka has not met its burden of showing a substantial likelihood of success on the merits and that Eureka's motion for a preliminary injunction should, therefore, be denied.[3]

III.   Conclusion

For the reasons set forth above, the Court DENIES Eureka's Motion for Preliminary Injunction [docket no. 8].

**IT IS SO ORDERED this 31st day of January, 2008.**

*(signed)* Vicki Miles-LaGrange
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

---

[3] Because all four requirements for a preliminary injunction must be satisfied, and because the Court finds Eureka has failed to satisfy the substantial likelihood of success on the merits requirement, the Court declines to address the remaining three requirements.