# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EUREKA WATER COMPANY, an Oklahoma corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )  Case No. CIV-07-988-M |
| NESTLÉ WATERS NORTH AMERICA, INC., a foreign corporation, | ) ) ) ) |
| Defendant. | ) |

## ORDER

This case is scheduled for trial on the Court's January 2010 trial docket.

Before the Court is plaintiff's Motion for Partial Summary Judgment, filed November 2, 2009. On November 20, 2009, defendant filed its response, and on December 4, 2009, plaintiff filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

Plaintiff is a local Oklahoma bottled water company that has been bottling and/or distributing water under the Ozarka name. Since its first use, the Ozarka trademark has had several changes in ownership and is presently owned by defendant.[1] On or about November 14, 1975, defendant's predecessor signed a License Agreement with plaintiff. Plaintiff contends that the License Agreement provides it with an exclusive license to the Ozarka brand in 60 counties in Oklahoma; defendant contends that the License Agreement is limited to Ozarka purified water and drinking water made from OZARKA drinking water concentrates and does not include spring water or any other product.

---

[1] In 1987, defendant, under the name of Perrier Group of America, acquired the Ozarka trademark.

In the early 1990's, plaintiff began selling Ozarka PET bottled spring water, a product that defendant itself bottled for plaintiff. In the summer of 2007, defendant notified plaintiff that it was unilaterally implementing certain changes in their relationship. Based upon this notification, plaintiff filed the instant action. Defendant has filed various counterclaims, including trademark infringement under § 32 of the Lanham Act (counterclaim 3), unfair competition under § 43(a) of the Lanham Act (counterclaim 4), deceptive trade practices (counterclaim 5), and common law trademark infringement and unfair competition (counterclaim 6). Plaintiff has asserted the defenses of laches, acquiescence, abandonment, and waiver to these counterclaims. Plaintiff now moves the Court for partial summary judgment on counterclaims 3, 4, 5, and 6 filed by defendant.[2]

## II.   Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden

---

[2]In its motion, plaintiff also moved for summary judgment as to counterclaim 1. On November 19, 2009, the parties filed a Joint Stipulation of Dismissal of Nestlé Waters' Counterclaim for Interference with Business Relations (counterclaim 1). Because of the dismissal of counterclaim 1, the Court finds plaintiff's motion for partial summary judgment as to counterclaim 1 is now moot.

of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   Discussion

Plaintiff asserts that it is entitled to summary judgment on counterclaims 3, 4, 5, and 6 for the following reasons: (1) based on the undisputed facts, defendant is estopped by the doctrine of laches from claiming trademark infringement and unfair competition; (2) defendant is estopped by the doctrine of acquiescence from claiming trademark infringement and unfair competition; (3) defendant has abandoned its rights to the Ozarka mark in the 60 Oklahoma counties covered by the 1975 License Agreement (the "Territory"); and (4) defendant has waived its rights to control the quality of the goods and services associated with the Ozarka mark in the Territory.

A.   Laches

"Laches consists of two elements: (1) inexcusable delay in instituting suit; and (2) resulting prejudice to [the party] from such delay." *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 523 (10th Cir. 1987). Plaintiff asserts that defendant had no excuse for its significant delay in bringing its claims against plaintiff. Defendant, however, contends that there is a factual dispute concerning whether it "inexcusably delayed" in asserting its trademark rights that precludes summary judgment. Specifically, defendant asserts that it had good business reasons – a longstanding personal relationship with Dave Raupe, plaintiff's non-competitive use of the Ozarka trademark, and the companies' respective use of the Ozarka trademark was complimentary – to overlook plaintiff's

alleged unlicensed use of the Ozarka trademark. In its reply, plaintiff asserts that defendant's excuses for delay do not amount to a genuine issue of material fact and that courts do not inquire into specific excuses.

Initially, the Court finds that it is appropriate to consider defendant's excuses for the delay and to determine whether said delay was inexcusable. The Court would also note that contrary to plaintiff's assertion, courts do inquire into a party's specific excuses. *See, i.e., Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1102-03 (9th Cir. 2004) (analyzing party's explanations for delay); *Anheuser-Busch, Inc. v. Du Bois Brewing Co.*, 175 F.2d 370, 374 (3d Cir. 1949) (analyzing party's excuses for delay). Further, having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to defendant and viewing all reasonable inferences in defendant's favor, the Court finds defendant has presented sufficient evidence to create a genuine issue of material fact as to whether it <u>inexcusably</u> delayed in bringing its counterclaims against plaintiff. The Court, therefore, finds that plaintiff is not entitled to summary judgment as to defendant's counterclaims 3, 4, 5, and 6 based upon plaintiff's laches defense.

B. <u>Acquiescence</u>

"Acquiescence is an affirmative defense that requires a finding of conduct on the [party's] part that amounted to an assurance to the [other party], express or implied, that [the party] would not assert his trademark rights against the [other party]." *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 547-48 (10th Cir. 2000) (internal quotations and citations omitted). Further, "[a]cquiescence requires proof even more demanding than a showing (which would suffice for a laches defense) that the party seeking to enforce its trademark rights has unreasonably delayed pursuing litigation and, as a result, has materially prejudiced the alleged infringer." *Id.* at 548. Thus, an acquiescence defense "requires

proof of three elements: (1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the [junior user] undue prejudice." *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996).

As set forth above, the Court finds defendant has presented sufficient evidence to create a genuine issue of material fact as to whether it inexcusably delayed in bringing its counterclaims against plaintiff. Accordingly, the Court finds that plaintiff is not entitled to summary judgment as to defendant's counterclaims 3, 4, 5, and 6 based upon plaintiff's acquiescence defense.

C.     Abandonment

Plaintiff asserts that defendant and/or its predecessors have abandoned all rights in the Ozarka trademark in the Territory by failing to exert any control over the quality of goods provided in association with the Ozarka trademark.

> Naked (or uncontrolled) licensing of a mark occurs when a licensor allows a licensee to use the mark on any quality or type of good the licensee chooses. When a trademark owner engages in naked licensing, without any control over the quality of goods produced by the licensee, such a practice is inherently deceptive and constitutes abandonment of any rights to the trademark by the licensor. Thus, the licensor must take some reasonable steps to prevent misuses of his trademark in the hands of others. The critical question . . . is whether the plaintiff sufficiently policed and inspected its licensee['s] operations to guarantee the quality of the products [the licensee] sold. Because a finding of insufficient control results in the forfeiture of a mark, a party asserting insufficient control by a licensor must meet a high burden of proof.

*Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 871 (10th Cir. 1995).

Defendant, however, contends that licensee estoppel bars plaintiff from claiming abandonment due to "naked licensing" during the life of the license.  Under the doctrine of licensee estoppel,

> [t]he licensee is estopped from claiming any rights against the licensor which are inconsistent with the terms of the license.  This is true even after the license expires.  He is estopped from contesting the validity of the mark, . . . or challenging the license agreement as void or against public policy, e.g., because it granted a naked license.  But he may challenge the licensor's title to the mark based on events which occurred *after* the license expired.

*Creative Gifts*, 235 F.3d at 548 (emphasis in original).

Having carefully reviewed the parties' submissions, the Court finds that all of the conduct on which plaintiff bases its abandonment/naked license argument occurred during the life of the license.  Accordingly, the Court finds that licensee estoppel bars plaintiff from asserting its abandonment defense.  The Court, therefore, finds that plaintiff is not entitled to summary judgment as to defendant's counterclaims 3, 4, 5, and 6 based upon plaintiff's abandonment defense.

D.   Waiver

Plaintiff asserts that defendant has waived its rights to control the type of goods and services on which plaintiff can use the Ozarka trademark, as well as any and all quality control provisions.

> Analysis of the applicability of waiver focuses on the intent of the non-breaching party.  If he has intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it and may not thereafter seek judicial enforcement.  In a contractual setting, as here, waiver occurs when an obligor manifests an intent not to require an obligee to strictly comply with a contractual duty.

*Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979) (internal citations omitted).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to defendant, the Court finds that there is a genuine issue of material fact as to whether defendant has waived its rights to control the type of goods and services on which plaintiff can use the Ozarka trademark as well as any and all quality control provisions. Accordingly, the Court finds that plaintiff is not entitled to summary judgment as to defendant's counterclaims 3, 4, 5, and 6 based upon plaintiff's waiver defense.

IV.    Conclusion

For the reasons set forth above, the Court DENIES plaintiff's Motion for Partial Summary Judgment [docket no. 124].

**IT IS SO ORDERED this 21st day of December, 2009.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE