# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

EUREKA WATER COMPANY,           )
an Oklahoma corporation,        )
                                )
                    Plaintiff,  )
                                )
vs.                             )          Case No. CIV-07-988-M
                                )
NESTLÉ WATERS NORTH AMERICA     )
INC., a Delaware corporation,   )
                                )
                    Defendant.  )

## ORDER

Before the Court is defendant's Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial, filed September 22, 2010. On October 20, 2010, plaintiff filed its response, and on November 3, 2010, defendant filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.      Introduction

This case primarily involves a business dispute over the use of the Ozarka trademark and the meaning of a License Agreement between plaintiff and defendant, two companies that both bottle, sell, advertise and distribute bottled water. In 1975, plaintiff entered into a written License Agreement (the "1975 License Agreement") with Arrowhead Puritas Waters ("Arrowhead"), the predecessor to defendant, giving plaintiff certain rights to use the Ozarka trademark on water products distributed in a sixty-county area of Oklahoma. The primary dispute in this case involves the scope of the 1975 License Agreement.

Plaintiff asserts that the 1975 License Agreement gave it the exclusive right to use the Ozarka trademark on any and all products, including bottled spring water, in a sixty-county area in Oklahoma. Defendant disputes that the 1975 License Agreement grants plaintiff any exclusive right

to use the Ozarka trademark and also contends that plaintiff's rights to the Ozarka trademark are limited to the two Ozarka-brand products expressly identified in the 1975 License Agreement – purified water and "drinking water" made from the combination of purified water and mineral additives – and that Ozarka-brand spring water products are not included within the definition.

The case was tried to a jury on May 10, 2010 through June 8, 2010. On May 25, 2010, at the end of plaintiff's case in chief, defendant filed a motion for judgment as a matter of law. On May 26, 2010, plaintiff filed its response to defendant's motion. On May 27, 2010, the Court denied defendant's motion. On June 6, 2010, at the close of all the evidence, defendant filed another motion for judgment as a matter of law. On June 7, 2010, the Court denied defendant's motion.

After deliberation, the jury returned a verdict in favor of plaintiff and against defendant on plaintiff's breach of contract claim and tortious interference with business relations claim and in favor of defendant on plaintiff's violation of the Oklahoma Deceptive Trade Practices Act claim. The jury also found in favor of plaintiff and against defendant on defendant's monies due on account claim, unfair competition under the Lanham Act claim, and violation of the Oklahoma Deceptive Trade Practices Act claim. The jury awarded plaintiff damages in the sum of $9.2 million as to its breach of contract claim and awarded plaintiff damages in the sum of $5 million as to its tortious interference with business relations claim.

The parties then filed briefs regarding plaintiff's equitable claims. On August 25, 2010, the Court issued its decision, finding that plaintiff's request for a declaratory judgment should be granted and that plaintiff's motion for judgment on plaintiff's unjust enrichment and promissory estoppel/detrimental reliance claims should be denied. The Court further found that defendant was not entitled to injunctive relief as to its counterclaims for unfair competition under § 43(a) of the

Lanham Act and deceptive trade practices in violation of the Oklahoma Deceptive Trade Practices Act. Finally, the Court found that the jury's award of damages should be added together.

II.    Applicable Standards

"Judgment as a matter of law is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion. We do not weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for that of the jury. However, we must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law." *Mason v. Okla. Tpk. Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997) (internal quotations and citations omitted). In considering a motion for judgment as a matter of law, the court should construe the evidence and inferences most favorably to the non-moving party. *Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 976 (10th Cir. 1996).

"The decision whether to grant a new trial is committed to the informed discretion of the district court." *Ryder v. City of Topeka*, 814 F.2d 1412, 1424 (10th Cir. 1987). In considering a motion for new trial, the court must view the evidence in the light most favorable to the prevailing party. *Joyce v. Davis*, 539 F.2d 1262, 1264 (10th Cir. 1976). "[T]he party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983). A new trial is appropriate if the verdict is "clearly, decidedly or overwhelmingly against the weight of the evidence." *Black v. Hieb's Enters., Inc.*, 805 F.2d 360, 363 (10th Cir. 1986) (internal citations omitted).

III.     Discussion

    A.     Breach of contract verdict and declaratory judgment

        Defendant contends that the breach of contract verdict and declaratory judgment in plaintiff's favor are not supported by sufficient, competent evidence or by applicable law.  Specifically, defendant contends: (1) plaintiff's course of performance evidence was neither competent nor indicative of the intent of the parties in 1975; (2) Stephen Browne's deposition testimony concerning a prior oral agreement was insufficient to support the breach of contract verdict and the declaratory judgment as a matter of law; (3) plaintiff filled the gaps in its proof with unfairly prejudicial evidence and innuendo while defendant was constrained from presenting critical evidence in its defense; and (4) application of the UCC to the 1975 License Agreement was not warranted and defendant is entitled to judgment as a matter of law under generally applicable contract law.

        1.     Course of performance evidence

        Defendant asserts that plaintiff's attempt to overcome the unambiguous terms of the 1975 License Agreement with course of performance evidence that contradicted or altered the agreement should not have been permitted and the Court should enter judgment in favor of defendant as a matter of law.  However, in its March 26, 2010 Order, the Court found that the 1975 License Agreement was ambiguous.  *See* March 26, 2010 Order [docket no. 174] at 4.  Accordingly, the Court finds that it was appropriate under Okla. Stat. tit. 12A, § 2-202 for course of performance evidence to be admitted in the instant case to explain or supplement the terms of the 1975 License Agreement.  The Court further finds that the evidence presented by plaintiff did not contradict the express terms of the agreement, as those terms could reasonably be interpreted to mean that

4

plaintiff's exclusive license included any expansion of products under the Ozarka name.[1]  Finally, the Court finds that at trial plaintiff did not seek to add new terms for the purchase and sale of the Ozarka PET spring water to the 1975 License Agreement; any evidence regarding the favorable pricing and per-case payments went to the parties' understanding of the terms of the 1975 License Agreement and to any damages that plaintiff suffered as a result of defendant's breach of said agreement.

Defendant further asserts that plaintiff's purported course of performance evidence did not satisfy the requirements for such evidence under the UCC.  Specifically, defendant asserts that because there was no repeated sequence of conduct from 1975-1990, there was no course of performance between the parties during this time.  Additionally, defendant asserts that after 1990, Arrowhead, the original contracting party, had been replaced and, thus, any course of performance following Arrowhead's replacement by Perriér does not illuminate the intent of the original contracting parties and is not admissible as course of performance evidence.  Finally, defendant asserts that any dealings between plaintiff and Perriér/defendant after 1990 does not meet the UCC definition of course of performance because Perriér/defendant did not accept the performance or acquiesce in it without objection.

A course of performance of a contract demonstrates how the parties understand the terms of their agreement.  The UCC provides:

> A "course of performance" is a sequence of conduct between the parties to a particular transaction that exists if:

---

[1]The 1975 License Agreement contains the following title: "LICENSE TO DISTRIBUTE, BOTTLE, ADVERTISE, AND SELL OZARKA PRODUCTS."  1975 License Agreement at 2 (emphasis added).

5

> (1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and
> (2) the other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

Okla. Stat. tit. 12A, § 1-303(a).  Further, in the case at bar, the jury was instructed regarding course of performance as follows:

> A course of performance exists between parties to a contract if you find by the greater weight of the evidence that there is a sequence of conduct between the parties to a particular transaction and (1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and (2) the other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.  In this case, the parties to the 1975 License Agreement are plaintiff, Eureka Water Company, and defendant, Nestlé Waters North America Inc., including its predecessors, BCI Arrowhead Drinking Water Co. and Perrier Group of America.
>
> A parties' course of performance is relevant in ascertaining the meaning of the agreement of the parties and in showing a waiver of any term inconsistent with the course of performance, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement.  Additionally, express terms of an agreement and any applicable course of performance must be construed whenever reasonable as consistent with each other, and if such a construction is unreasonable, express terms prevail over course of performance.

Court's Jury Instruction No. 17.

While defendant is correct that there was no repeated sequence of conduct between the parties from 1975 to 1990 and, thus, no course of performance, the Court finds such lack of course of performance during this fifteen year time period is not fatal to plaintiff's claims.  As set forth above, the issue in the instant action is the scope of the 1975 License Agreement, specifically whether the agreement was limited to only drinking water and purified water or whether it included

any expansion of products under the Ozarka name. Any course of performance regarding this issue necessarily would not have occurred until a new product line was introduced in Oklahoma, which did not occur until the late 1980's/early 1990's. Thus, any relevant course of performance between the parties could not have occurred until the new product was introduced. Therefore, the Court finds that the fifteen year gap in any course of performance between the parties by itself does not render any post-1990 course of performance inadmissible.

Additionally, viewing the evidence and inferences in the light most favorable to plaintiff, the Court finds the post-1990 course of performance evidence satisfies the requirements for such evidence under the UCC. It is undisputed that there was a repeated sequence of conduct between the parties during this time period. Further, while defendant asserts that this in not proper course of performance evidence because the original contracting party, Arrowhead, had been replaced, defendant cites to no case law to support this assertion. Additionally, the jury was instructed that for purposes of course of performance the parties to the 1975 License Agreement included defendant and its predecessors Arrowhead and Perriér, and defendant did not object to this portion of the instruction. Finally, while there was evidence presented that Perriér and defendant objected on occasion to plaintiff's interpretation of the scope of the 1975 License Agreement, there was also evidence presented regarding the extensive course of performance between the parties from which a jury could reasonably infer acquiescence on the part of defendant.

### 2. Stephen Browne's testimony

Defendant contends that the admission of Stephen Browne's deposition testimony regarding a lunch meeting with Dave Raupe, plaintiff's owner, and two executives from Arrowhead at the Oklahoma City Country Club in either 1974 or 1975, prior to the drafting and signing of the 1975

License Agreement was contrary to law and could not be relied upon to establish a sufficient evidentiary basis for the breach of contract verdict or the declaratory judgment. Specifically, defendant contends that the prior oral agreement about which Mr. Browne testified contradicts the express terms of the 1975 License Agreement and, thus, any testimony about this agreement is prohibited under both the UCC and general Oklahoma contract law. Having carefully reviewed Mr. Browne's testimony, the Court finds that this testimony does not contradict the express terms of the 1975 License Agreement, as those terms could reasonably be interpreted to mean that plaintiff's exclusive license included any expansion of products under the Ozarka name. Accordingly, the Court finds that the admission of said testimony was not contrary to law and could be relied upon to establish a sufficient evidentiary basis for the breach of contract verdict and the declaratory judgment.

Defendant also contends that it was prejudiced because Mr. Browne did not testify in person, thereby preventing defendant from effectively cross-examining Mr. Browne before the jury, particularly with respect to information that defendant learned after Mr. Browne's April 2009 deposition. Federal Rule of Civil Procedure 32(a)(4)(C) provides: "A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: . . . (C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment; . . . ." Fed. R. Civ. P. 32(a)(4)(C). At trial, plaintiff submitted an affidavit of Mr. Browne setting forth the following: (1) Mr. Browne is suffering from throat cancer; (2) Mr. Browne had his larynx removed and an electronic device had recently been surgically installed in an attempt to assist his speech; (3) the device makes it very difficult to understand what he is trying to say, and (4) Mr. Browne's physical infirmity prevented him from communicating effectively. *See* Affidavit of Stephen Browne [docket

no. 309-1].  Based upon Mr. Browne's undisputed affidavit, the Court finds that it was within its authority under Rule 32(a)(4)(C) to permit plaintiff to present Mr. Browne by deposition as opposed to compelling him to testify via live testimony.

Additionally, the Court finds that defendant was not unduly prejudiced by the fact that Mr. Browne did not testify in person.  Defendant was clearly aware of Mr. Browne's health condition and likely inability to testify at trial as early as April 2009.  Because the trial was not held until May 2010, the Court finds that defendant clearly had the opportunity to re-depose Mr. Browne regarding any information defendant discovered after his initial deposition, and if the parties could not mutually agree to a second deposition, defendant could have sought the Court's assistance in obtaining a second deposition.  Defendant, however, did not do so.  Thus, the Court finds any prejudice defendant may have suffered as a result of any inability to thoroughly cross-examine Mr. Browne, and specifically to cross-examine him regarding additional information, was a result of defendant's own decision not to pursue all available avenues to depose Mr. Browne a second time.

Accordingly, the Court finds no error in the admission of Mr. Browne's deposition testimony.

### 3.    Miscellaneous evidence

Defendant further contends that during the trial plaintiff repeatedly referenced inadmissible and prejudicial evidence.  Specifically, defendant contends that: (1) plaintiff's attorneys relied heavily on the March 2007 inventory and summary prepared by Gina Mello which should have been protected by attorney-client privilege and which was more prejudicial than probative and repeatedly referenced privileged and unproduced correspondence listed on Ms. Mello's index of documents and on defendant's privilege log; (2) the Court improperly admitted plaintiff's damages expert's

narrative report; and (3) the Court improperly permitted plaintiff's counsel to question Perry Green, who was defendant's corporate representative at trial, concerning issues that were outside his personal knowledge. Defendant also contends that it was unnecessarily constrained in the presentation of its evidence. Specifically, defendant contends that: (1) it was precluded from offering relevant testimony, particularly the testimony of Ted Sands and Von Igo, regarding the course of dealing between the parties prior to the 1975 License Agreement; (2) the Court excluded plaintiff's 1966 franchise agreement, and (3) the Court excluded certain evidence related to Fizz-O of Tulsa.

a.     <u>March 2007 inventory and summary prepared by Gina Mello</u>

Defendant asserts that the Court should not have admitted into evidence a March 2007 inventory and summary prepared by Gina Mello, defendant's former Senior Manager of Business Development. Defendant first contends that this inventory and summary is protected by the attorney-client privilege and attorney work product doctrine. The Court has previously held, on four separate occasions, that this summary and inventory are not protected by the attorney-client privilege or the work product doctrine. *See* March 20, 2009 Order [docket no. 62]; July 23, 2009 Order [docket no. 87]; November 23, 2009 Order [docket no. 146]; May 11, 2010 Order [docket no. 269]. Having carefully reviewed the parties' submissions, and having heard the evidence presented during the trial, the Court finds that the inventory and summary was created by Ms. Mello predominately for a business purpose and not primarily to seek legal advice or assistance, and, thus, the Court did not err in its previous holdings that the inventory and summary is not protected by the attorney-client privilege nor the attorney work product doctrine.

Second, defendant contends that the inventory and summary was far more prejudicial than probative and should never have been admitted. While the inventory and summary was certainly prejudicial to defendant, the Court finds that it was not more prejudicial than probative. These documents are defendant's own internal business documents created at the request of defendant's Chief Financial Officer in order to make a decision regarding defendant's relationship with plaintiff, and as such, were highly probative in relation to key issues in this case. Accordingly, the Court finds that it did not err in admitting the inventory and summary.

Third, defendant contends that the comments and notes contained on the inventory and summary upon which plaintiff focused, and the deposition testimony plaintiff introduced from Ms. Mello confirming what those comments and notes stated, constituted improper and inadmissible legal opinion testimony by a layperson and should have been excluded under Federal Rule of Evidence 701. Having carefully reviewed the parties' submissions, the Court finds the comments and notes contained on the inventory and summary and Ms. Mello's deposition testimony regarding these comments and notes did not constitute improper legal opinion testimony by a layperson and were properly admitted.[2]

Finally, defendant contends that the prejudicial effect from the admission of the summary and inventory was increased based upon plaintiff's attorneys' repeated references to privileged and unproduced correspondence listed on Ms. Mello's index of documents. Having carefully reviewed the testimony cited by defendant, as well as the record of the bench conferences held regarding these

---

[2]The Court would further note that it appears that said notes and testimony would constitute an admission by a party opponent pursuant to Federal Rule of Evidence 801(d)(2) and, thus, Rule 701 would be inapplicable. *See* 29 Wright & Gold, <u>Federal Practice and Procedure: Evidence</u> § 6253 (1997).

references, the Court finds that plaintiff's attorneys' references to items listed on Ms. Mello's inventory were proper. Further, the Court finds that even if said references were not proper, it can not be reasonably concluded that without said references the jury's verdict would have been different and, thus, defendant's substantial rights were not prejudiced by these references.

<b>b.</b>    <u>Plaintiff's expert's report</u>

Defendant asserts that plaintiff's damages expert's narrative report was rife with hearsay and assumptions, stated as if they were fact, and was not needed to support or explain the substance of the expert's work on damages and, thus, was improperly admitted. The Court would first note that the entirety of the expert's report was not admitted into evidence, the "Nature of the Action," "Scope of this Report," and "General Background Information" sections were not admitted. The portion of the report that was admitted consisted primarily of the expert's opinions.

Having carefully reviewed the parties' submissions, the Court finds that it did not err in admitting into evidence the portion of the expert's report that was admitted. At worst, the expert report is simply cumulative of the expert's live testimony. Additionally, the Court finds that said report is not "rife with hearsay" and finds that defendant was not prejudiced by the admission of the expert's report. Defendant's counsel thoroughly cross-examined plaintiff's expert during trial as to any assumptions underlying his opinions, including the assumptions in his report to which defendant now objects.

<b>c.</b>    <u>Perry Green</u>

Defendant asserts that plaintiff's counsel was improperly permitted to question Perry Green, who was defendant's corporate representative at trial, concerning issues that were outside his personal knowledge. Defendant further asserts that plaintiff's counsel was permitted to treat Mr.

Green as if he were a corporate representative being produced for deposition on all subjects pursuant to Federal Rule of Civil Procedure 30(b)(6), rather than as a fact witness testifying to facts within his personal knowledge.

Having carefully reviewed the parties' submissions, the Court finds no error in relation to plaintiff's counsel's questioning of Mr. Green. At trial, Mr. Green specifically testified that he was defendant's corporate representative and was "answering for the company". *See* Trial Transcript Vol. VII at 1134, lns. 6-11. Further, at trial, defendant did not immediately object to questions posed to Mr. Green concerning issues that were outside his personal knowledge. Additionally, if he was asked any questions outside his personal knowledge, Mr. Green testified that he did not have knowledge of the information sought by the question. Accordingly, the Court finds defendant's substantial rights were not prejudiced by plaintiff's counsel's questioning of Mr. Green as the corporate representative of defendant.

d.      Ted Sands and Von Igo

Defendant contends that it was unnecessarily precluded from offering relevant testimony from its own witnesses about the course of dealing between the parties prior to the 1975 License Agreement. Specifically, defendant states that Ted Sands, a former Arrowhead senior executive, was prevented from testifying about whether Arrowhead would have authorized plaintiff or any other bottlers to continue bottling spring water under the Ozarka label after the conversion to facsimile drinking water in 1972. Defendant also states that Von Igo, another former Arrowhead official who managed the conversion from spring water to facsimile water in 1972, was prevented from providing similar testimony when defendant was not permitted to take his trial deposition.

Having carefully reviewed the transcript of Mr. Sands' testimony, the Court finds that defendant was not prevented from questioning Mr. Sands about whether Arrowhead would have authorized plaintiff or any other bottlers to continue bottling spring water under the Ozarka label. Plaintiff's counsel objected on the basis of the question being a leading question; the Court sustained said objection and directed defendant's counsel to ask direct questions. The Court did not rule that defendant's counsel could not question Mr. Sands regarding this issue. After the Court ruled on the objection, rather than re-asking the question, defendant's counsel moved on to another area of questioning. Accordingly, the Court finds that it committed no error in relation to Mr. Sands' testimony.

Further, the Court finds it did not err in precluding defendant from adding Mr. Igo to defendant's Final Witness List and taking his trial deposition. Defendant moved on May 3, 2010 to add Mr. Igo to its Final Witness List. In denying defendant's motion, the Court found:

> defendant has known about Mr. Igo since approximately August 2008, and, in fact, plaintiff disclosed Mr. Igo in its first discovery responses. Based upon defendant's motion, it appears defendant made a conscious decision to exclude Mr. Igo from its Final Witness List, and it was not until this Court's order ruling on defendant's motion for summary judgment that defendant realized that its decision was in error. An error in strategy, however, is not good cause for amending a witness list.

May 7, 2010 Order [docket no. 266] at 2. Having carefully reviewed the parties' submissions, the Court finds no error in the above ruling.

e.        1966 franchise agreement

Defendant contends that the Court improperly excluded plaintiff's 1966 franchise agreement. Defendant asserts that this agreement, alongside the 1972 franchise agreement, would have established that Ozarka Water Company and later Arrowhead consistently identified the specific

products covered by each agreement and changed these agreements in writing when new or different products were introduced. Having carefully reviewed the parties' submissions, the Court finds that the 1966 franchise agreement was properly excluded on the basis of relevance. Plaintiff had not assumed ownership of the company until after the 1966 franchise agreement had already been entered into and, thus, the agreement would have little impact on how plaintiff and Arrowhead, and later defendant, defined and explained the products listed in the 1975 License Agreement.[3]

### f.    Fizz-O of Tulsa

Defendant also contends that it was prevented from presenting relevant evidence concerning Fizz-O of Tulsa. Having carefully reviewed the parties' submissions, the Court finds no error in the exclusion of defendant's evidence regarding Fizz-O of Tulsa. Specifically, the Court finds that any evidence regarding a license agreement between defendant and Fizz-O of Tulsa, a third party, and any evidence regarding conduct between plaintiff and Fizz-O of Tulsa simply is not relevant to the issues in this case. Further, the Court finds that even if said exclusion was not proper, it can not be reasonably concluded that if said evidence were admitted the jury's verdict would have been different and, thus, defendant's substantial rights were not prejudiced by the exclusion of this evidence.

### 4.    Application of the UCC

Defendant contends that application of the UCC to the 1975 License Agreement was not warranted and it is entitled to judgment as a matter of law under generally applicable contract law.

---

[3]The Court would further note that during the trial defendant explained that the relevance of the 1966 franchise agreement was to show that the parties would be familiar with the use of the word "exclusive" and not for the basis defendant is now asserting – that the parties consistently identified the specific products covered by each agreement.

Prior to trial, the Court held that the 1975 License Agreement constitutes a "transaction in goods" and that the UCC, therefore, governs the agreement. *See* May 4, 2010 Order [docket no. 256]. Defendant asserts that the evidence at trial, however, demonstrated that the 1975 License Agreement created only an intangible property right to use the Ozarka trademark and did not constitute any transaction in goods between the parties. Having carefully reviewed the parties' submissions, the Court finds that the evidence presented at trial supports the Court's prior finding that the 1975 License Agreement constitutes a "transaction in goods." Accordingly, the Court finds that it was appropriate to apply the UCC to the 1975 License Agreement.

B. Tortious interference with business relations claim

As a threshold matter, defendant asserts that it cannot be liable for tortious interference with business relations because it was a party to those relationships. In its response, plaintiff contends that defendant has waived this argument because it was not raised in defendant's prior motion for judgment as a matter of law. In its reply, defendant asserts that it did raise this issue.

"[A] renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original motion." *Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 738-39 (10th Cir. 2007). Having carefully reviewed the parties' submissions and defendant's two prior motions for judgment as a matter of law, the Court finds that defendant did not assert that it could not be liable for tortious interference with business relations because it was a party to those relationships in its prior motions. While defendant did state in its motion for judgment as a matter of law at the close of the evidence that its personnel directly and regularly interacted with the customers at issue, defendant did so in the context of arguing that plaintiff had not shown malice and that plaintiff had not shown that defendant solicited specific existing customers of plaintiff and tried to purposefully take away those

customers.  Defendant asserted that plaintiff's tortious interference claim was "difficult to make" based upon defendant's interaction with plaintiff's customers but never asserted that as a "party to the relationship", it can not be liable for tortious interference with those relationships.  Accordingly, the Court finds that defendant has waived this argument.

In order to establish its tortious interference with contractual and business relations claim, plaintiff must show: (1) that it had a business or contractual right that was interfered with; (2) that the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable, and (3) that damage was proximately sustained as a result of the complained-of interference.  *Mac Adjustment, Inc. v. Prop. Loss Research Bureau*, 595 P.2d 427, 428 (Okla. 1979).  Defendant contends that plaintiff failed to provide sufficient evidence to establish these elements.  Specifically, defendant contends that: (1) plaintiff never demonstrated a business right with which defendant interfered; (2) plaintiff failed to produce sufficient evidence of the requisite malice or that defendant was not motivated by a desire to promote its own business interests; and (3) plaintiff was unable to offer sufficient evidence at trial to establish proximate cause.

Viewing the evidence and inferences in the light most favorable to plaintiff, the Court finds there is a legally sufficient evidentiary basis to support the jury's finding in favor of plaintiff on its tortious interference with business relations claim.  Specifically, the Court finds that there is a legally sufficient evidentiary basis to support a finding that plaintiff had a business right, specifically plaintiff's exclusive right to distribute, bottle, advertise, and sell Ozarka products in sixty counties

in Oklahoma, with which defendant interfered.[4]  The Court further finds that there is a legally sufficient evidentiary basis to support a finding that defendant's interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable.  Finally, the Court finds that there is a legally sufficient evidentiary basis to support a finding that plaintiff's damages were proximately sustained as a result of the complained-of interference.

### C.    Damages

Defendant asserts that it was unfairly prejudiced by plaintiff's damages testimony and evidence, specifically the expert opinion testimony of Todd Lisle, and was subjected to a duplicative award of actual damages.

### 1.    Damages testimony and evidence

Defendant contends that the approach to estimating damages utilized by plaintiff's expert Todd Lisle was not reliable and his testimony should have been excluded under Federal Rule of Evidence 702.[5]  Specifically, defendant contends that Mr. Lisle's approach resulted in estimates which were inflated and unsupportable in view of the facts and the Court's ruling on summary judgment.  Plaintiff asserts that because defendant was able to cross-examine Mr. Lisle thoroughly

---

[4]Defendant seemed to recognize this right in its motion for judgment as a matter of law at the close of evidence when it stated: "In order for Eureka's tortious interference claim to have any merit, the jury must first find that the 1975 License Agreement's [sic] grants Eureka an exclusive license to use of the Ozarka trademark on all products."  Defendant's Motion for Judgment as a Matter of Law at the Close of All the Evidence and Brief in Support at 9 (emphasis in original).

[5]The Court would note that defendant filed a motion to exclude the testimony of Mr. Lisle. In that motion, defendant asserted the same arguments that it is asserting in the instant motion.  After thorough briefing by the parties and a three day hearing, the Court denied defendant's motion to exclude, finding that Mr. Lisle's testimony was reliable.  *See* May 7, 2010 Order [docket no. 265].

on the evidence relied upon to form his opinions, the Court performed its gate-keeping role and properly admitted Mr. Lisle's testimony.

Defendant contends that it was erroneous, and clearly unreliable, for Mr. Lisle, in determining an "earnings base" for plaintiff's business with defendant, to assume that plaintiff would continue receiving the same favorable pricing and terms on purchases of products supplied by defendant as plaintiff had been receiving in prior years and to assume that plaintiff would continue to receive per-case payments based on shipments of Ozarka-brand PET spring water products to the Wal-Mart distribution center and to Sam's Club stores located within the sixty-county territory referenced in the 1975 License Agreement, at the same rates as had been in place when those payments began in 1997. Defendant contends that these assumptions were no longer viable once the Court had ruled on summary judgment that plaintiff was not entitled to continue receiving the same favorable pricing and terms and the per-case payments.

While this Court did rule that defendant was not legally required to continue providing the same favorable pricing and terms to plaintiff and to continue making the per-case payments, the Court finds that this ruling did not preclude plaintiff's expert, Mr. Lisle, from using the parties' history, i.e., the financial arrangements regarding the sale of Ozarka-brand PET spring water products, in determining plaintiff's "earnings base" in order to determine what the value of plaintiff's exclusive rights to the Ozarka name would be. The Court finds Mr. Lisle's use of this information was certainly reasonable and did not render his opinions unreliable. Further, the Court finds that any shortcomings of relying on this information was thoroughly explored by defendant's counsel on cross-examination.

Defendant further contends that Mr. Lisle's determination of the "earnings base" for plaintiff was additionally flawed by the inclusion of income from the sales of non-Ozarka products, such as Perriér and San Pellegrino, and that Mr. Lisle's projections were inflated by his decision to assume that sales of products purchased from defendant would continue to grow at "wildly optimistic" rates. Defendant also contends that Mr. Lisle's valuation approach failed to account properly for the impact of defendant's increased promotional spending for Ozarka PET spring water products in Oklahoma, for the possible loss or decline of spring water sources, and for changes nationally and in Oklahoma to the bottled water market.

A review of Mr. Lisle's trial testimony reveals that these alleged flaws in Mr. Lisle's opinion were thoroughly explored by defendant's counsel through cross-examination and the reasons underlying the methodology Mr. Lisle used in forming his opinion were thoroughly explored by plaintiff's counsel through direct and re-direct examination. The Court finds these alleged flaws do not so undermine the reliability of Mr. Lisle's opinion as to render his testimony inadmissible but instead go toward Mr. Lisle's credibility, which was a determination to be made by the jury.

Accordingly, the Court finds that Mr. Lisle's testimony was properly admitted under Rule 702.

   2.   Duplicative award of damages

Defendant contends that plaintiff should not be allowed a double recovery on its breach of contract and tortious interference claims.[6] Defendant asserts that plaintiff maintained that the

---

[6]In its Response in Opposition to Plaintiff's Brief on Equitable Claims, defendant asserted the same arguments regarding double recovery that it is asserting in the instant motion. After thorough briefing by the parties, the Court found that plaintiff would not receive a double recovery if the jury's award of damages for each claim were added together. *See* August 25, 2010 Order [docket no. 350].

alleged breach of contract and tortious interference resulted in the same alleged loss and presented these two claims as alternate theories to compensate the same injury. Defendant, thus, contends that plaintiff should not be allowed to recover on both its claim for breach of contract and its claim for tortious interference.

As set forth above, the jury awarded $9.2 million in damages as to plaintiff's breach of contract claim and awarded $5 million in damages as to plaintiff's tortious interference with business relations claim. The Court and the parties have no way of knowing, and can only speculate as to, how the jury determined the amount of damages. "It is well settled that a verdict will not be upset on the basis of speculation as to the manner in which the jurors arrived at it." *Midwest Underground Storage, Inc. v. Porter*, 717 F.2d 493, 501 (10th Cir. 1983).

Further, "[w]hen a jury is instructed not to award duplicative damages and it returns a total damage figure within the range of evidence, we are generally unwilling to disturb or second guess the jury's verdict." *N. Amer. Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1113 (10th Cir. 2009). In the instant case, prior to its deliberations, the jury was instructed in Jury Instruction No. 32 to avoid duplicating damages. Defendant, however, contends that the risk of confusion to the jury was not fully resolved by Jury Instruction No. 32. Specifically, defendant asserts the instruction refers to plaintiff having "asserted several claims for the same alleged wrong," and also to awarding only "one amount of damages per wrong," but does not define what is meant by the term "wrong" or identify which claims were associated with the same "wrong."

At trial, defendant did not object to Jury Instruction No. 32 and never submitted any proposed jury instruction on double recovery. Having carefully reviewed Jury Instruction No. 32, the Court finds that said instruction was not confusing to the jury and adequately stated the law

regarding double recovery. Accordingly, the Court finds that Jury Instruction No. 32 was not erroneous and adequately resolved any risk of confusion to the jury on this issue.

Additionally, because the jury was adequately instructed to avoid double recovery in this case and because the total of the damages awarded by the jury as to the breach of contract claim and tortious interference with business relations claim is within the range of evidence, the Court finds that adding the jury's award of damages for plaintiff's breach of contract claim and the jury's award of damages for plaintiff's tortious interference claim does not result in a duplicative award of damages. The Court finds that while plaintiff did maintain that the alleged breach of contract and tortious interference resulted in the same loss, the Court finds that it would be pure speculation on the part of the Court to find that the damages awarded as to these two claims were duplicative. Further, the Court finds that the varying amount of damages awarded as to each claim further supports a finding that the damages awarded were not duplicative.

D.     Defendant's deceptive trade practices and unfair competition claims

Although the jury found in favor of plaintiff on defendant's counterclaims for unfair competition under § 43(a) of the Lanham Act and deceptive trade practices in violation of the Oklahoma Deceptive Trade Practices Act and the Court ruled that defendant had not met its burden of proof of showing either a violation of § 43(a) of the Lanham Act or a violation of the Oklahoma Deceptive Trade Practices Act, defendant asserts that it is entitled to an injunction prohibiting plaintiff from engaging in further deceptive trade practices and unfair competition.[7]

---

[7]In its Response in Opposition to Plaintiff's Brief on Equitable Claims, defendant asserted the same arguments regarding its entitlement to an injunction that it is asserting in the instant motion. After thorough briefing by the parties, the Court found that defendant was not entitled to an injunction. *See* August 25, 2010 Order [docket no. 350].

It is a violation of § 43(a) of the Lanham Act for "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce . . . any false designation of origin . . . or false or misleading representation of fact" which is likely to cause confusion as to affiliation, connection, or association of a person with another, or as to the origin, sponsorship, or approval of his goods by another. 15 U.S.C. § 1125(a). Additionally, the Oklahoma Deceptive Trade Practices Act prohibits a person from engaging in a deceptive trade practice in the course of a business. Okla. Stat. tit. 78, § 53. It is a deceptive trade practice to either: (1) "knowingly make[] a false representation as to the source, sponsorship, approval, or certification of goods or services"; (2) "knowingly make[] a false representation as to affiliation, connection, association with, or certification by another"; or (3) "knowingly make[] a false representation as to the characteristics . . . of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith." Okla. Stat. tit. 78, § 53(A)(2), (A)(3), & (A)(5).

Having carefully reviewed the parties' submissions, the Court finds that defendant has not met its burden of proof of showing either a violation of § 43(a) of the Lanham Act or a violation of the Oklahoma Deceptive Trade Practices Act. Accordingly, the Court finds that defendant is not entitled to injunctive relief as to its counterclaims for unfair competition under § 43(a) of the Lanham Act and deceptive trade practices in violation of the Oklahoma Deceptive Trade Practices Act.

IV.    Conclusion

For the reasons set forth above, the Court DENIES defendant's Motion for Judgment as a

Matter of Law or, Alternatively, Motion for New Trial [docket no. 367].

**IT IS SO ORDERED this 22nd day of March, 2011.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE