**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| EUREKA WATER COMPANY, | ) | |
| an Oklahoma corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-07-988-M |
| | ) | |
| NESTLÉ WATERS NORTH AMERICA | ) | |
| INC., a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is plaintiff's Brief-in-Chief in Support of Its Remanded Promissory

Estoppel Claim, filed December 14, 2012.  On January 15, 2013, defendant filed its response brief.

On February 8, 2013, plaintiff filed its reply, and on March 15, 2013, defendant filed its surreply.

Based upon the parties' submissions, the Court makes its determination.

I.    Background

Plaintiff alleged that a 1975 agreement grants it the exclusive license in 60 Oklahoma

counties to sell spring water and other products using the Ozarka trademark.  Plaintiff sued

defendant, the current owner of the Ozarka trademark, to obtain a declaratory judgment of that right

and to obtain monetary relief under several theories, including breach of contract, tortious

interference with business relations, unjust enrichment, and promissory estoppel.  A jury found for

plaintiff on its contract and tortious interference claims, and this Court entered a judgment declaring

that the 1975 agreement granted plaintiff the exclusive right that it claimed in the Ozarka trademark.

In a post-verdict order, this Court denied as duplicative plaintiff's equitable claims based on unjust

enrichment and promissory estoppel.  Defendant appealed the declaratory judgment and the money

judgment on the breach of contract and tortious interference claims, and plaintiff cross-appealed on

the dismissal of its equitable claims.

On appeal, the Tenth Circuit:

> REVERSE[D] the district court's denial of Nestle's motion for
> judgment as a matter of law on Eureka's contract and tortious-
> interference claims, REVERSE[D] the declaratory judgment, and
> REMAND[ED] to the district court with instructions to enter
> judgment in favor of Nestle on the contract and tortious-interference
> claims.  We REVERSE the district court's denial of Eureka's
> promissory-estoppel claim and REMAND that claim to the district
> court for further consideration in light of this opinion.  We AFFIRM
> the district court's denial of relief on Eureka's unjust-enrichment
> claim.

*Eureka Water Co. v. Nestle Waters N. Am., Inc.*, 690 F.3d 1139, 1156 (10th Cir. 2012).

On October 23, 2012, this Court directed the parties to advise the Court as to whether they

wished to submit further briefing to the Court on plaintiff's promissory estoppel claim or wished to

rely on the prior briefing submitted in relation to that claim.  The parties advised the Court that they

wished to provide further briefing, and the Court set a briefing schedule.  All briefing has been

submitted, and plaintiff's promissory estoppel claim is now ripe for determination.

II.    Discussion

In relation to plaintiff's promissory estoppel claim, the Tenth Circuit stated:

> Eureka's promissory-estoppel claim is based on Nestle's alleged
> failure to fulfill two promises.  First, Eureka claims that in 1997
> Nestle agreed to compensate Eureka for each case of Ozarka product
> that Nestle shipped directly into Eureka's territory – 50 cents for PET
> products and 30 cents for bulk products.  Over the next 10 years
> Nestle sent Eureka 67 checks totaling about $2.5 million.  But Eureka
> claims that Nestle still owes it $1,056,474 because in late 2003 Nestle
> unilaterally reduced the royalty rates for both PET and bulk cases to
> 25 cents a case.  Nestle never paid as originally promised, even
> though Eureka sent invoices for the difference.  Second, in the early
> 1990s Eureka began invoicing Nestle for pickup allowances,

> billbacks, promotions, and trade discounts, and up until 2007 Nestle reimbursed Eureka for those fees.  But Eureka claims that Nestle has refused to reimburse it for 29 invoices totaling approximately $298,000.
>
> A claim for promissory estoppel has four elements: "(1) a clear and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment and (4) hardship or unfairness can be avoided only by the promise's enforcement." *Garst v. Univ. of Okla.*, 38 P.3d 927, 931 (Okla.Civ.App.2001) (internal quotation marks omitted).  Nestle does not contend that Eureka failed to establish any of the four elements listed above.  Instead, it argues that Eureka cannot recover under promissory estoppel because Eureka's evidence failed to satisfy a fifth element – that Nestle made false representations or concealed facts.  But, as Eureka points out, Nestle failed to raise its "misrepresentation" argument below.  Therefore, we will not consider it, *see ClearOne*, 653 F.3d at 1182, and we remand for further proceedings on the claim.

*Eureka Water Co.*, 690 F.3d at 1155-56.

A.    Whether defendant is precluded from challenging the merits of plaintiff's promissory estoppel claim

In its response brief, defendant asserts that plaintiff can not satisfy the four elements of promissory estoppel under Oklahoma law.  Because defendant did not assert plaintiff's inability to satisfy the four elements of a promissory estoppel claim on appeal, plaintiff contends, based upon the law of the case and the mandate rule, that defendant is foreclosed from challenging the merits of plaintiff's promissory estoppel claim on remand.

> The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.  The doctrine of law of the case comes into play only with respect to issues previously determined.  Furthermore, the law of the case doctrine is solely a rule of practice and not a limit on the power of the court.

*Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991) (internal quotations and citations omitted). Further, "[t]he mandate rule is a corollary to the law of the case requiring trial court conformity with the appellate court's terms of remand; . . . ." *United States v. West*, 646 F.3d 745, 748 (10th Cir. 2011).

Having carefully reviewed the Court's August 25, 2010 Order denying plaintiff's promissory estoppel claim and the parties' submissions, the Court finds that defendant is not precluded by either the law of the case or the mandate rule from challenging the merits of plaintiff's promissory estoppel claim. Specifically, the Court finds that this Court has never decided whether plaintiff has satisfied the four elements of a promissory estoppel claim. In its August 25, 2010 Order, the Court never ruled on the issue of whether plaintiff satisfied the four elements of a promissory estoppel claim but instead held that based upon the duplicative nature of the damages claimed, plaintiff was not entitled to judgment on its promissory estoppel claim. Further, because the Court made no ruling on the issue of whether plaintiff satisfied the four elements of a promissory estoppel claim, the Court finds there was no need for defendant to pursue this issue on appeal and defendant did not waive any future argument regarding the merits of plaintiff's promissory estoppel claim by failing to raise this issue on appeal. Finally, a review of the Tenth Circuit's decision reveals that the Tenth Circuit has also made no ruling on the issue of whether plaintiff has satisfied the four elements of a promissory estoppel claim.

The Court, therefore, finds that defendant may challenge the merits of plaintiff's promissory estoppel claim.

B.      Merits of promissory estoppel claim

As set forth above, "[a] claim for promissory estoppel has four elements: '(1) a clear and

unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3)

reasonable reliance upon the promise to the promisee's detriment and (4) hardship or unfairness can

be avoided only by the promise's enforcement.' *Garst v. Univ. of Okla.*, 38 P.3d 927, 931

(Okla.Civ.App.2001) (internal quotation marks omitted)." *Eureka Water Co.*, 690 F.3d at 1156.

In its brief-in-chief, plaintiff states that its promissory estoppel claim is based upon the following

three circumstances: (1) underpaid royalties/invasion fees that defendant promised to pay to plaintiff

at the rate of $0.50 per case for PET products and $0.30 per case for bulk products, totaling

$1,056,474.30 (for a time period of late 2003 through October 2007); (2) unpaid royalties/invasion

fees for two Sam's Club stores, totaling $215,176.00 (for a time period of 2001 through 2007)[1]; and

(3) unpaid amounts owed to plaintiff for pick-up allowances, billbacks and other payments, totaling

$298,393.24 (for a time period of February 2007 through February 2008).

1.      Underpaid royalties/invasion fees

Plaintiff bases this claim upon defendant's promise that it would pay royalties, also known

as invasion fees, for all of defendant's direct sales to Sam's Club and Walmart stores within

plaintiff's territory in the amounts of $0.50 per case for PET products and $0.30 per case for bulk

products.   For 13 years, plaintiff received 67 invasion fee checks from defendant, totaling

approximately $2.5 million.  However, in late 2003, defendant advised plaintiff that it would be

---

[1]In its response, defendant asserts that plaintiff can not bring its "Sam's Club" claim because plaintiff previously sought recovery for this claim under its unjust enrichment claim and not its promissory estoppel claim. Because this Court finds that this claim fails on its merits, the Court finds no need to address whether plaintiff can properly bring this claim under its promissory estoppel theory.

reducing the amount of the per case invasion fee payments and ultimately did reduce the invasion fee rate to $0.25 per case for both PET products and bulk products.  Plaintiff did not agree to this reduction and began routinely invoicing defendant for the difference between the original fee rate and the new fee rate.  Through its promissory estoppel claim, plaintiff seeks the amount it claims defendant underpaid when it unilaterally reduced the invasion fee rate.

Having carefully reviewed the parties' submissions, the Court finds that plaintiff has not satisfied all four elements of a promissory estoppel claim.  Specifically, the Court finds that plaintiff has not shown that it reasonably relied upon the promise to its detriment.  Because defendant gave plaintiff notice that it would be reducing the invasion fee rate, the Court finds that plaintiff could no longer reasonably rely upon defendant's prior promise to pay an invasion fee in the amounts of $0.50 per case for PET products and $0.30 per case for bulk products.  Accordingly, the Court finds that defendant is entitled to judgment as to plaintiff's promissory estoppel claim based upon underpaid royalties/invasion fees.

### 2.    Unpaid royalties/invasion fees

Plaintiff bases this claim upon defendant's alleged promise that it would keep plaintiff informed of all actual and potential developments that will result in direct shipments into plaintiff's territory and that it would compensate plaintiff for any additional stores at the same invasion fee rate of $0.50 per case for PET products and $0.30 per case for bulk products.  Two additional Sam's Club stores opened in plaintiff's territory in 2001 and 2005.  Defendant did not inform plaintiff of the opening of either store and did not pay plaintiff any invasion fees for these stores.  Through its promissory estoppel claim, plaintiff seeks the amount of unpaid royalties/invasion fees for the two additional Sam's Club stores.

To succeed on a promissory estoppel claim, "the alleged promise must be reasonably certain and definite, and a claimant's subjective understanding of the promissor's statements cannot, without more, support a promissory estoppel claim." *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1021 (10th 2002) (internal quotations and citations omitted). Further,

> A proposal is quite different than an unambiguous promise. By its very nature, a proposal is tenuous – subject to review, negotiation, or outright rejection. Unlike an unambiguous promise, there is nothing inherently trustworthy about a proposal which a party could reasonably rely upon.

*Prime Northgate Plaza Ltd. P'ship v. Lifecare Acquisitions Corp.*, 985 F. Supp. 815, 819 (N.D. Ill. 1997).

Having carefully reviewed the parties' submissions, and particularly having reviewed the March 5, 1997 letter from Dave Evans in which the alleged promise was made, as well as Dave Raupe's response letter of March 12, 1997, the Court finds that plaintiff has not satisfied all four elements of a promissory estoppel claim. Specifically, the Court finds that plaintiff has not shown a clear and unambiguous promise. The statement in the March 5, 1997 letter regarding additional stores, particularly when viewed in conjunction with the March 12, 1997 response letter, is clearly a proposal rather than an unambiguous promise. The parties were in negotiations, and no reasonably certain and definite promise was made regarding the additional stores.

Accordingly, the Court finds that defendant is entitled to judgment as to plaintiff's promissory estoppel claim based upon unpaid royalties/invasion fees.

### 3. Pick-up allowances, billbacks, and other expenses

Plaintiff bases this claim upon defendant's alleged promise to pay certain pick-up allowances, billbacks, and other expenses. Plaintiff does not direct the Court to any specific promise

defendant made to pay these expenses but instead relies upon the fact that defendant had paid other invoices for these expenses in the past when they were submitted with supporting backup and documentation.  Having carefully reviewed the parties' submissions, the Court finds plaintiff has not satisfied all four elements of a promissory estoppel claim.  Specifically, the Court finds that plaintiff has not shown a clear and unambiguous promise.  The fact that defendant had paid invoices in the past does not establish that defendant made a clear and unambiguous promise to pay any and every invoice that might be submitted by plaintiff for pick-up allowances, billbacks, or other expenses or to pay the specific invoices at issue in this claim.

Accordingly, the Court finds that defendant is entitled to judgment as to plaintiff's promissory estoppel claim based upon pick-up allowances, billbacks, and other expenses.

III.    Conclusion

For the reasons set forth above, the Court FINDS that defendant is entitled to judgment as to plaintiff's promissory estoppel claim.

**IT IS SO ORDERED this 6th day of June, 2013.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE